Filed 7/14/26  In re Lillie K. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re Lillie K., a Person Coming Under the Juvenile Court Law. | B344178 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 24CCJP03905A) |
| Plaintiff and Respondent, | |
| v. | |
| EDWARD K. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Mary E. Kelly, Judge.  Reversed.

Benjamin Ekenes, under appointment by the Court of Appeal, for Defendant and Appellant Edward K.

Joseph D. Mackenzie, under appointment by the Court of Appeal, for Defendant and Appellant Candace C.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Principal Deputy County Counsel, for Plaintiff and Respondent.

———————————————

## INTRODUCTION

Edward K. (Father) and Candace C. (Mother) appeal from the juvenile court's jurisdictional finding and dispositional order, declaring their daughter, Lillie K., a dependent of the court under Welfare and Institutions Code section 300, subdivision (b).[1] On appeal, the parents argue that jurisdiction was not warranted because the juvenile court orally pronounced that it was striking the language in the section 300 petition stating that Lillie was at risk of serious physical harm, damage, and danger. The parents further assert that the evidence was insufficient to establish that their alleged inability to provide Lillie with appropriate care and supervision placed her at substantial risk of serious physical harm. We conclude that the juvenile court erred in exercising jurisdiction under section 300, subdivision (b), after striking the allegation Lillie was at risk of serious physical harm, damage, and danger. We accordingly reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.    Section 300 petition

In October 2024, the Los Angeles County Department of Children and Family Services (DCFS) received a referral alleging that then 12-year-old Lillie was a victim of emotional abuse. According to the reporting party, the parents often had loud verbal confrontations, and at times, they could be heard cursing at Lillie and making the child cry. When DCFS first interviewed the family, both parents denied the allegations, and indicated that the neighbors likely heard them yelling at their dogs. Mother did, however, acknowledge that Lillie was very

---

[1]    Unless otherwise stated, all further undesignated statutory references are to the Welfare and Institutions Code.

hyperactive due to Attention-Deficit/Hyperactivity Disorder (ADHD), and that Mother recently yelled at the child when she accidentally threw away her ADHD medication. Mother also explained that she withdrew Lillie from school in July 2024, and was in the process of trying to enroll the child in an online program. In her interview, Lillie likewise denied any physical or verbal abuse, and stated she felt safe in her parents' care. The social worker observed that Lillie had marks on her arms, legs, and face, which the child indicated were bug bites from playing outside.

DCFS also spoke with several of the family's neighbors, who reported that they often heard the parents screaming at Lillie and calling her names, which caused the child to cry. One neighbor shared some audio recordings with DCFS in which both parents could be heard yelling at Lillie and referring to her as "stupid" and "retard."

Over the next few weeks, DCFS followed up with the family about Lillie's lack of enrollment in school. As described by Mother, she withdrew Lillie from school because the child was failing her classes and being bullied by other students. Mother was instructing Lillie with packets that she found on the internet, but she acknowledged that she was " 'not a teacher' " and could not "make the child do much" because of Lillie's ADHD. Mother confirmed that she planned to enroll Lillie in a K–12 online program and would provide proof of enrollment to DCFS. Mother also reported that Lillie used to see a therapist but had not done so for several years, and that Mother was open to restarting therapy for the child. Lillie's former school counselor advised DCFS that the child had an Individualized Education Program (IEP) due to her ADHD diagnosis, and that Lillie did

fine in a classroom setting but failed to complete any homework. DCFS also consulted with its education specialist who recommended that Lillie attend in-person school to receive appropriate services related to her IEP.

On December 13, 2024, DCFS filed a dependency petition for Lillie under section 300, subdivision (b). The petition alleged a single count as follows: "The child Lillie [K.'s] mother, Candace [C.], and her father, Edward [K.], have a limited ability to provide the child with appropriate parental care and supervision. The parents are unable to handle the child's behavior due to the child's diagnosis of ADHD and have failed to ensure she receives mental health and behavioral services to address her needs. The mother and father's limited ability to provide the child with appropriate parental care and supervision endangers the child's physical health and safety, creates a detrimental home environment and places the child at risk of serious physical harm, damage and danger."

At an initial hearing held on December 30, 2024, the juvenile court denied DCFS's request to detain Lillie from her parents. The court ordered that Lillie remain released to the parents under DCFS's supervision pending adjudication of the petition.

**2.      Jurisdictional and dispositional report**

In January 2025, DCFS conducted additional interviews with the family for its jurisdiction/disposition report. In her interview, Lillie indicated that she was attending an online homeschooling program, but only spent about two hours per week on school work. She maintained that her parents never called her names, and that the neighbors were mistaken because the parents were talking about their dogs. Lillie once got into trouble

4

when Mother found out that she was talking to a 17-year-old boy on her phone. Lillie denied that the boy ever said anything inappropriate to her, and confirmed that she was no longer in contact with him. Lillie stated that Mother disciplined her by taking away her phone or making her do chores.

In her interview, Mother indicated that Lillie's behaviors were sometimes difficult due to her ADHD, but insisted that she was capable of caring for the child. Mother reported that Lillie had been under the care of Dr. Posner, a behavioral specialist, since she was five years old. Although the child was not currently attending therapy, Mother scheduled an upcoming appointment for her with the Department of Mental Health. Mother also enrolled Lillie in an online homeschooling program, but she was not scheduled to start the program until later that month. In his interview, Father stated that Lillie's ADHD symptoms included staying up late, sneaking out of bed after the parents went to sleep, and acting hyper at times. Father did not believe Lillie needed any services to address her ADHD apart from medication. Both Mother and Father continued to deny that they were ever verbally abusive to the child.

For its report, DCFS confirmed that Lillie was a patient of Dr. Posner at Olive View UCLA. Lillie had followup appointments with Dr. Posner every three months regarding her ADHD, and she was last seen in January 2025. Dr. Posner prescribed Lillie medication for her ADHD.

DCFS recommended that the juvenile court sustain the section 300 petition and order that Lillie remain placed with her parents with family maintenance services. In its report, DCFS expressed concern that the parents were verbally abusing Lillie based on the statements of various neighbors. DCFS also was

5

concerned that the parents were neglecting Lillie's educational needs given that they had not provided proof of enrollment in a homeschooling program and Lillie indicated that she was only spending about two hours per week on school work. DCFS asked the juvenile court to order that Lillie be assessed for mental health services and enrolled in a formal schooling program.

In a last minute information report filed on February 7, 2025, DCFS stated that Mother provided proof of Lillie's enrollment in an online homeschooling program, and that during a recent home visit, the social worker observed Lillie doing her school work. However, in late January 2025, Mother contacted the social worker for assistance in transitioning Lillie back to in-person schooling because Mother was having a hard time navigating the online program. DCFS also reported that, as of January 21, 2025, Lillie was enrolled in mental health services and would be attending therapy once a week.

### 3. Jurisdictional and dispositional hearing

On February 10, 2025, the juvenile court held a combined jurisdictional and dispositional hearing. Mother objected to the hearsay statements of the neighbors contained in DCFS's reports under section 355. Counsel for Mother and counsel for Father joined in requesting that the court dismiss the section 300 petition. Mother's counsel argued that the allegations of verbal abuse were made by anonymous neighbors who misinterpreted the parents' yelling at their dogs, and even if the parents yelled at Lillie, there was no evidence that such conduct placed the child at risk of physical harm. Mother's counsel also noted that DCFS had been provided with proof of Lillie's enrollment in a formal homeschooling program, and in any event, Mother was in the process of returning the child to in-person schooling. In addition,

Mother's counsel asserted that the parents had been addressing Lillie's ADHD diagnosis through the care provided by Dr. Posner, which included prescribed medication, and that Lillie recently resumed therapy as well.

Counsel for Lillie and counsel for DCFS joined in asking that the juvenile court sustain the petition as pled. Lillie's counsel argued that there was evidence that "at times Mother may not know how to respond to some of the child's behaviors, which results in yelling and sort of a chaotic home environment." Lillie's counsel also expressed concern that the child was not enrolled in a formal schooling program for at least six months, and that the parents previously discontinued therapy for her. DCFS's counsel similarly argued that the parents were failing to meet Lillie's mental health and educational needs. DCFS's counsel noted that the parents had not sought therapy for the child for several years, and that they did not pursue a formal homeschooling program until DCFS became involved. DCFS's counsel asserted that "it's a step in the right direction that Mother contacted the social worker asking for help to enroll the child in an in-person school, but this is further reflection of her limited ability to provide care for the child."

After hearing the argument of counsel, the juvenile court sustained the section 300 petition as amended by interlineation. In announcing its ruling, the court stated in relevant part: "I am not relying on the statements of the neighbors. The [section] 355 objections, I think, are well-founded. … [¶] However, I do agree that minor[ ] being removed from school for that amount of time was problematic. [¶] … [T]he reason why, from the court's perspective, that I believe that there is limited abilities is because the child wasn't in school. And that's very concerning to

7

the court, because you don't want someone to get behind, and especially with an I.E.P., being home schooled, and the packets weren't even geared towards courses that would allow the child to get credit.  So I do believe that there is a limited ability. [¶] I am modifying the petition to say that the parents have difficulty handling the child's … behavior due to the child's diagnosis and failed to ensure mental health and behavioral services. [¶] I am striking 'as to physical harm and damage and danger' and so with that modification, I do sustain the (b) count. [¶] … [O]n that basis, the court finds that the child is a person described by section 300, subdivision (b).  I declare the child a dependent of the court under section 300."

Although the juvenile court stated that it was striking the phrase " 'physical harm and damage and danger' " from the section 300 petition, the  handwritten modifications only struck the words "damage and danger," while leaving in place the words "serious physical harm."  The sustained petition as amended by the court's interlineations read as follows:  "The child Lillie [K.'s] mother, Candace [C.], and her father, Edward [K.], have a limited ability to provide the child with appropriate parental care and supervision.  The parents have difficulty handling the child's behavior due to the child's diagnosis of ADHD and have failed to ensure she receives mental health and behavioral services to address her needs.  The mother and father's limited ability to provide the child with appropriate parental care and supervision endangers the child's physical health and safety, creates a detrimental home environment and places the child at risk of serious physical harm."

With respect to disposition, the juvenile court ordered that Lillie remain placed with her parents under the supervision of

DCFS.  The court also ordered family maintenance services, including individual counseling for the parents and mental health services for Lillie.

Both parents filed a timely appeal from the jurisdictional finding and dispositional order.

**4.      Postappeal orders**

DCFS requests this court take judicial notice of an order issued by the juvenile court during the pendency of the parents' appeal.  We grant DCFS's request.  (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)  This order reflects that, at a review hearing held on October 13, 2025, the juvenile court found that the conditions justifying the initial assumption of jurisdiction no longer existed.  The court terminated jurisdiction over Lillie and released the child to both parents.

## DISCUSSION

On appeal, the parents challenge the sufficiency of the evidence supporting the juvenile court's exercise of jurisdiction under section 300, subdivision (b).  They specifically contend that the evidence was insufficient to support a finding that Lillie was at substantial risk of suffering serious physical harm or illness.  Father also asserts that jurisdiction was unwarranted because the juvenile court struck the allegation that Lillie was at risk of serious physical harm, damage, and danger, which rendered the petition facially insufficient or internally contradictory.

DCFS argues that the parents' appeal is moot because jurisdiction has since been terminated with Lillie released to parental custody.  In support of this argument, DCFS filed a motion to dismiss the appeal concurrently with its request for judicial notice.  Alternatively, DCFS asserts that the juvenile court's jurisdictional finding was proper because its written

9

order, which left in place the phrase "at risk of serious physical harm," controls over its ambiguous oral ruling.  DCFS further contends that there was substantial evidence to support a finding that the parents' inability to appropriately care for Lillie placed the child at a substantial risk of serious physical harm.

Although the parents' appeal is moot, we exercise our discretion to consider the merits of the appeal.  We conclude the juvenile court's oral pronouncement of its ruling controls over the handwritten modifications to the section 300 petition, and that its decision to strike the allegation that Lillie was at risk of serious physical harm, damage, or danger did not support the assertion of jurisdiction under section 300, subdivision (b).  Accordingly, because the juvenile court erred in sustaining the amended petition, we reverse the jurisdictional finding.

1.    **Mootness**

We first address DCFS's argument that the parents' appeal has been rendered moot by the juvenile court's termination of dependency jurisdiction over Lillie.  "A case becomes moot when events ' "render[] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief." ' " (*In re D.P.* (2023) 14 Cal.5th 266, 276 (*D.P.*).)  "For relief to be 'effective,' two requirements must be met.  First, the plaintiff must complain of an ongoing harm.  Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*Ibid*.)  " 'As a general rule, an order terminating … jurisdiction renders an appeal from a previous order in the dependency proceedings moot.  [Citation.]  However, dismissal for mootness in such circumstances is not automatic.' " (*In re T.R.* (2024) 107 Cal.App.5th 206, 214.)  Rather, "[a] reviewing court must ' "decide on a case-by-case basis whether subsequent events

10

in a juvenile dependency matter make a case moot and whether [its] decision would affect the outcome in a subsequent proceeding." ' " (*D.P.*, at p. 276.)

"Even when a case is moot, courts may exercise their 'inherent discretion' to reach the merits of the dispute." (*D.P.*, *supra*, 14 Cal.5th at p. 282.) In determining whether to exercise such discretion, "[c]ourts may consider whether the challenged jurisdictional finding 'could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings.' " (*Id.* at p. 285.) Courts also may consider the reason why the appeal has been rendered moot. (*Id.* at p. 286.) For example, "where … the case becomes moot due to prompt compliance by parents with their case plan, discretionary review may be especially appropriate." (*Ibid.*) Otherwise, "[i]t would perversely incentivize noncompliance if mootness doctrine resulted in the availability of appeals from jurisdictional findings only for parents who are less compliant or for whom the court has issued additional orders." (*Ibid.*)

Here, the issue of whether the juvenile court properly asserted jurisdiction over Lillie has been rendered moot by its subsequent order terminating jurisdiction. Lillie was never removed from parental custody during the proceedings, and when the court terminated jurisdiction, the child remained placed with both parents. Moreover, neither parent is challenging any aspect of the dispositional order on appeal. However, it appears that the reason that jurisdiction was terminated was because the parents promptly complied with their case plans, and thus, the juvenile court found that the conditions justifying the assumption of jurisdiction no longer existed. Under these circumstances, we exercise our discretion to consider the merits of the appeal.

11

## 2. The juvenile court's oral pronouncement prevails over its conflicting written order

Both Mother and Father contend that the juvenile court erred in exercising jurisdiction over Lillie under section 300, subdivision (b), because there was no evidence that the parents' alleged conduct placed the child at substantial risk of serious physical harm. In adjudicating the section 300 petition, the juvenile court orally pronounced that it was "striking 'as to physical harm and damage and danger' " from the language of the petition and sustaining the petition "with that modification." However, in the handwritten modifications to the petition, the court or its staff only struck the words "damage" and "danger," and left in place the words "at risk of serious physical harm." Given this conflict between the court's oral and written orders, the parties dispute which one controls.

California Courts of Appeal have reached differing conclusions as to which ruling controls when a juvenile court's oral pronouncement conflicts with its written order. (See, e.g., *In re Karla C.* (2010) 186 Cal.App.4th 1236, 1259, fn. 9 [oral pronouncement placing child with father under dependency jurisdiction prevailed over written order granting father sole custody]; *In re Aryanna C.* (2005) 132 Cal.App.4th 1234, 1241, fn. 5 [orders regarding reunification services as stated at dispositional hearing prevailed over conflicting order in clerk's transcript]; *In re Jerred H.* (2004) 121 Cal.App.4th 793, 798, fn. 3 [written order terminating parental rights of unknown fathers controlled over oral pronouncement referencing alleged father only]; *In re Jennifer G.* (1990) 221 Cal.App.3d 752, 756, fn. 1 [written order granting parents visitation controlled over oral statement that children would not benefit from continuing

12

relationship with parents].)  Our Supreme Court has prescribed the following approach for resolving conflicts between a clerk's and reporter's transcripts:  " '[W]hen … the record is in conflict it will be harmonized if possible; but where this is not possible that part of the record will prevail, which, because of its origin and nature or otherwise, is entitled to greater credence [citation]. Therefore whether the recitals in the clerk's minutes should prevail as against contrary statements in the reporter's transcript, must depend upon the circumstances of each particular case.' "  (*People v. Smith* (1983) 33 Cal.3d 596, 599; accord, *People v. Anzalone* (2013) 56 Cal.4th 545, 552, fn. 6; *People v. Harrison* (2005) 35 Cal.4th 208, 226.)

Under the circumstances of this case, we conclude that the juvenile court's oral pronouncement that it was "striking 'as to physical harm and damage and danger' " from the language of the section 300 petition is entitled to greater credence. Consistent with its oral ruling, the court or its staff crossed out the words "damage" and "danger" from the petition filed by DCFS.  The most reasonable explanation for the failure to cross out the remainder of the phrase "places the child at risk of serious physical harm" is a clerical error.  There is nothing in the record to suggest that the court sought to draw a distinction between the words "harm," "damage," and "danger" in modifying the petition, or intended to make a finding that the parents' conduct placed Lillie at risk of physical harm, but not at risk of physical damage or danger.  Instead, it appears that the court decided to assert jurisdiction based on the parents' failure to enroll Lillie in school for an extended period of time, even though it did not believe that such conduct posed a risk of serious physical harm, damage, or danger to the child.

This interpretation of the juvenile court's ruling is consistent with the totality of its remarks at the adjudication hearing. In sustaining an amended version of the petition, the court stated that Lillie "being removed from school … was problematic," that it "believe[d] that there is limited abilities … because the child wasn't in school," and that this was "very concerning to the court, because you don't want someone to get behind … especially with an I.E.P." Yet the court never indicated that the parents' "limited abilities" to provide Lillie with appropriate schooling in any way placed the child at risk of suffering serious physical harm. (See *In re Janet T.* (2001) 93 Cal.App.4th 377, 388–389 [failure to attend school regularly does not in and of itself pose a substantial risk of serious physical harm to child].) Moreover, while the record does not indicate whether the handwritten modifications to the petition were made by the judge or the judicial assistant, there is no question that the judge delivered the oral ruling of the court from the bench. On this record, the court's oral pronouncement that it was striking the language regarding Lillie being at risk of physical harm, damage, and danger prevails over its conflicting written modification to the section 300 petition.

3. **The juvenile court erred in asserting jurisdiction under section 300, subdivision (b)**

Given that the juvenile court rejected the allegation that Lillie was at substantial risk of serious physical harm based on her parents' limited abilities, it was error for the court to exercise jurisdiction over the child under section 300, subdivision (b). Subdivision (b) of the statute provides, in relevant part, that a child comes within the jurisdiction of the juvenile court if "[t]he child has suffered, or there is a substantial risk that the child will

14

suffer, serious physical harm or illness, as a result of … [¶] … [t]he failure or inability of the child's parent … to adequately supervise or protect the child." (§ 300, subd. (b)(1)(A).) " '[T]o obtain a jurisdictional determination under section 300, subdivision (b)(1), an agency must "prove three elements: (1) the parent's … neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness." ' " (*In re Gilberto G.* (2024) 105 Cal.App.5th 52, 61–62.) " ' "The third element 'effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future.' " ' " (*In re Jesus M.* (2015) 235 Cal.App.4th 104, 111.) As appellate courts repeatedly have recognized, " 'section 300, subdivision (b) … " 'means what it says. Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the child is exposed to a substantial risk of serious physical harm or illness.' " ' " (*In re Israel T.* (2018) 30 Cal.App.5th 47, 52 (*Israel T.*); accord, *In re Jesus M.*, at p. 111; *In re Noe F.* (2013) 213 Cal.App.4th 358, 366; *In re Alysha S.* (1996) 51 Cal.App.4th 393, 399; *In re Rocco* M. (1991) 1 Cal.App.4th 814, 820.)

In *Israel T.*, for instance, the juvenile court "found true under section 300, subdivision (b)(1) that there was 'a … risk that the child[ren] will suffer … physical harm,' and that [the parents] 'created an endangering home environment for the children in that trace amounts of methamphetamine were found in the children's home within access of the children.' " (*Israel T., supra*, 30 Cal.App.5th at p. 50.) However, in making its findings, the juvenile court "struck the word 'substantial' before the word 'risk,' and struck the word 'serious' before the word 'physical

15

harm' " from the section 300 petition.  (*Ibid*.)  The Court of Appeal held that these findings did not support the assertion of jurisdiction under section 300, subdivision (b).  (*Id*. at pp. 52–53.)  As the *Isreal T.* court explained:  "By striking the language that stated the children were at substantial risk of serious harm, the [juvenile] court made clear that it did not believe the parents posed the level of risk to the children that must be found to warrant assertion of jurisdiction under subdivision (b) of section 300.  This was confirmed by the court's comment moments later, when it stated it did not believe [the parents] posed 'any … risk' to the children.  Accordingly, its finding that jurisdiction was warranted must be reversed."  (*Id*. at p. 52, fn. omitted.)

Here, the juvenile court announced that it was striking the language in the section 300 petition pertaining to Lillie being at risk of physical harm, damage, and danger.  As in *Isreal T.*, by striking that specific language, the court made clear that it did not believe that Mother or Father posed the level of risk to Lillie that is required to warrant jurisdiction under subdivision (b) of the statute.  Because the court decided that Lillie was not at risk of serious physical harm from her parents' conduct in sustaining the amended petition, it could not properly assert jurisdiction over the child under section 300, subdivision (b).

DCFS contends that the parents forfeited any challenge to the facial sufficiency of the section 300 petition by failing to object in the juvenile court.  We disagree.  The petition filed by DCFS was not facially deficient.  It contained the allegation that the parents' "limited ability to provide [Lillie] with appropriate parental care and supervision … places the child at risk of serious physical harm, damage, and danger."  At the adjudication hearing, the parents argued the petition should be dismissed

16

because DCFS failed to prove that their conduct posed a substantial risk of serious physical harm to Lillie.  In finding that Lillie came within the jurisdiction of the court under section 300, subdivision (b), the court amended the petition by striking the "physical harm, damage, and danger" language and then sustained the petition as amended by interlineation.  Thus, the issue before this court is not whether the amended petition was deficient on its face, but whether the juvenile court made the requisite findings to warrant the assertion of jurisdiction under section 300, subdivision (b).  (*Israel T.*, *supra*, 30 Cal.App.5th at p. 51 [no forfeiture where parent was "not challenging the sufficiency of the petition, but the court's failure to make the findings required by statute"].)  We decline to find forfeiture under these circumstances.

DCFS also asserts that we should review the ruling of the juvenile court rather than its reasoning by determining only if substantial evidence supported a finding of jurisdiction under section 300, subdivision (b).  However, as the Court of Appeal explained in *Israel T.*, "[i]f the record does not show that the [juvenile] court did, in fact, make the requisite findings, it is immaterial whether the evidence might have supported such findings.  The test for substantial evidence is applied to the court's actual finding." (*Israel T.*, *supra*, 30 Cal.App.5th at p. 53.)  In this case, the juvenile court found true the allegation that the parents had a limited ability to provide Lillie with appropriate care and supervision, but did not find true the allegation that Lillie suffered, or was at substantial risk of suffering, serious physical harm or illness.  Because the court failed to make the requisite findings to warrant jurisdiction under section 300, subdivision (b), it is immaterial whether the evidence might have

17

supported those findings if they had been made.  On this record, the juvenile court erred in exercising dependency jurisdiction over Lillie under section 300, subdivision (b).

## DISPOSITION

The motion to dismiss the appeal is denied.  The jurisdictional finding is reversed, and the juvenile court is directed to dismiss the dependency petition.

VIRAMONTES, J.

WE CONCUR:

WILEY, Acting P. J.

SCHERB, J.

18